**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS EARL BAILEY, JR.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 19-3263** |
| | : | |
| **JESSE KIRSCH, M.D.,** | : | |
| | : | |
| **Defendant.** | : | |

**McHugh, J.**                                                         **March 31, 2021**

<u>**MEMORANDUM**</u>

   This is a civil rights action brought by a prisoner proceeding pro se who alleges that he has been wrongfully treated for a seizure disorder from which he does not suffer, and has been coerced into taking a powerful medication that he does not need.  Defendant moved to dismiss both on the basis of the Plaintiff's failure to exhaust administrative remedies within the prison, and on the ground that he failed to state a claim as a matter of law.  I denied the motion to dismiss because the record as to exhaustion was unclear, even after the filing of an amended complaint, and because viewed in the light most favorable to the Plaintiff, his Complaint could be viewed as stating a claim.  Defendant now returns with a fuller record, moving for summary judgment.  For the reasons that follow, that motion will be granted.

   Plaintiff Thomas Earl Bailey Jr. has been incarcerated both at Berks County Prison and with the Pennsylvania Department of Corrections on several occasions.  The claim here arises out of one of his stays at Berks County in 2019.  Upon his readmission, his medical chart reflected that he suffers from a seizure disorder, and during that stay a prescription for phenobarbital was renewed by Defendant Jesse Kirsch, whom Plaintiff erroneously identifies as a medical doctor.

He is in fact a licensed physician assistant.[1]  Mr. Bailey contends that in fact he did not have a seizure disorder, that he did not want to take the medication, and that he was threatened with discipline if he would not take it.  Notably, it does not appear that Mr. Bailey contends he was in fact placed in administrative segregation or that any other punishment was imposed, merely that such discipline was threatened.

 1)  <u>Failure to exhaust administrative remedies.</u>

 The Prison Litigation Reform Act ("PLRA") requires inmates to present their claims through an administrative grievance process before filing suit in federal court.  Specifically, Section 1997e of Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  The Supreme Court has held that inmates must "properly" exhaust administrative remedies before filing suit in federal court.  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

 Here, Berks County has an established grievance procedure, discussed in my earlier memorandum addressing the second motion to dismiss.  *See* ECF 24.  Mr. Bailey filed a grievance, that was then denied.  Defendant argues that Mr. Bailey cannot show exhaustion

---

[1] Separately, I have denied Plaintiff's motion to join additional defendants whose names appear in the medical records, because I concluded that such joinder would be futile based upon my conclusion that Plaintiff's claims lack substantive merit.

because he has not brought forth evidence to show that he appealed the denial of his grievance. This case was docketed in the Middle District of Pennsylvania on July 23, 2019. The sole grievance in the record regarding Plaintiff's seizure disorder was dated July 19, 2019. *See* Pl. Exhibits at 24, ECF 52.[2] The grievance was addressed by the Prison at the first level on July 26, 2019, within the 15-day time provided by the established procedure. *Id.* Significantly, the grievance itself makes reference to the fact that suit had already been filed and accuses prison personnel of having read his legal mail. *Id.* In short, the undisputed record is that Mr. Bailey submitted this case for filing ***before*** he filed the relevant grievance, and it was docketed three days before the grievance was first addressed by prison officials. Mr. Bailey did not "properly" exhaust remedies before staring suit.

Mr. Bailey contends that proof of exhaustion is missing from the record because correctional officers stole documents from his cell. *See* Pl. Letter, ECF 44. It is unclear whether Mr. Bailey is arguing that he filed an earlier grievance or whether he appealed the July 19, 2019 grievance. Ten months after this action was filed, Plaintiff was able to docket a series of prison records, including grievances. *See* ECF 34, ECF 52. That filing included the relevant grievance here, for which there is no notice of appeal, and a later grievance, filed in November, 2019, together with a notice of his appealing its denial. It defies belief other relevant documents would remain in his possession, but not the one document necessary to show exhaustion, undercutting his contention that his legal files were destroyed. Further, the record shows that a prison official reviewed videotape in response to Mr. Bailey's complaint that materials were improperly removed from his cell. *See* ECF 52 at 24. It showed a correctional officer seizing two rolls of

---

[2] The copies of grievances docketed by Plaintiff were illegible in some instances. Defense counsel was requested to search for more legible copies and supply them to the Court. They have been docketed at ECF 52.

contraband toilet paper and nothing more. *Id.*  Although I declined to dismiss Mr. Bailey's Complaint for failure to exhaust, the record is now developed and it is clear that Mr. Bailey did not properly exhaust his remedies, notwithstanding his contention that a document was stolen from his cell.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

    2)  <u>Mr. Bailey's suit fails on the merits.</u>

Even if Mr. Bailey had properly exhausted his remedies, Defendant has shown "that there is no genuine issue of material fact and [he] is entitled to judgment as a matter of law." *Wiest v. Tyco Electronics Corp*, 812 F.3d 319, 328 (3d Cir. 2016).  A review of the record in this case reflects that Mr. Bailey does in fact have a longstanding seizure disorder for which he received Phenobarbital before incarceration and while in the custody of the Pennsylvania Department of Corrections.  And nothing in the record supports a claim that he was coerced into taking the medication or disciplined for not doing so.  Consequently, there is no basis for relief under the Constitution or Pennsylvania's law of medical malpractice.[3]

During an admission to Berks County Prison in 2014, on multiple occasions Plaintiff provided a history of a long-standing seizure disorder, starting with an initial screening on October 2, 2014.  *See* Def. Motion for Summary Judgment, Exh. D, ECF 42.  That history including having seizures within the previous year.  *Id.* at 12, 16.  He repeated that history during a follow-up physical examination with Paula Dillman-McGowan, CRNP.  *Id.* at 49.

---

[3] Mr. Bailey had moved to add a  claim for medical malpractice. Recognizing that he is proceeding pro se, I granted his motion and will analyze whether he has stated such a claim.

Several days later, Mr. Bailey was not cleared for work at the prison due to his seizure history. *Id.* at 46.

On a subsequent admission to the institution on March 27, 2016, Plaintiff underwent a Receiving Screening and gave a history of having seizures since childhood, but reported that he was not currently being treated. *Id.* at 30, 34. Early in that admission he reported an absence of seizures but records from December, 2016, show their recurrence. *Id*. at 94. He later stated that he had taken Phenobarbital, 115 mg, twice per day previously while incarcerated in Palm Beach County, Florida, but stopped taking the medication due to a lack of insurance. *Id.* at 99. During that admission, Plaintiff stated he was "agreeable" to taking Phenobarbital and it was ordered. *Id.* During a sick visit with Mr. Kirsch, Mr. Bailey stated that he had been on Phenobarbital since he was a teenager. *Id.* at 82. Throughout 2014, 2015 and 2016, Mr. Bailey was treated by Mr. Kirsch as well as by other medical providers. *Id.*

In 2017 Mr. Bailey entered the state correctional system. The New Reception/Parole Violator Return Screening Form dated March 7, 2017, indicated that he had a current diagnosis of epileptic seizures. Def. Mot. Summary Judgment Exh. C at 2, ECF 42-5. A Physical Examination form dated March 17, 2017 noted a prior medical history of epilepsy. *Id.* at 11. As a result, medical staff placed him on the chronic care list secondary to his seizure history. *Id.* at 12. In fact, special precautions were taken: no tasers were to be used, and he was to be housed on the ground level, and given a bottom bunk. *Id.* at 13-14. Perhaps most importantly, Plaintiff was continually prescribed Phenobarbital during his incarceration with the state. *Id***.** at 3-5.

Upon readmission to Berks County Prison in 2018, the same history of seizures was recounted by Mr. Bailey along with his use of Phenobarbital, albeit with Plaintiff reporting that

his last seizure was either in 2016 or 2017.  *See* Def. Mot. Summary Judgment Exh. D at 39. Nonetheless, he recounted taking medication for the seizures while in state prison and the last time he was at  Berks. *Id.* at 37-45.  In December 2018, Plaintiff gave a history of having a seizure three days ago, and claimed to have a seizure once every one to two months.  *Id.* at 59, 61.

Without recounting all of the other pertinent entries – all of which are consistent with the facts set forth above — the defendant here, physician assistant Jesse Kirsch, renewed Plaintiff's existing prescription for Phenobarbital on July 19, 2019.  *Id.* at 109.  Mr. Kirsch has attested under oath that he did not originate the prescription, but simply renewed it.  *See* Def. Motion for Summary Judgment Exh. A, ECF 42-3.  This is consistent with the written record, which refers to "expired meds Phenobarbital, 64.8 mg." Exh. D at 109.  Mr. Kirsch attests that the record reflects that Mr. Bailey "claimed to have an allergy" to another type of epilepsy medication, Dilantin. Exh. A, ECF 42-3.

That same day, Mr. Bailey filed his grievance referring to having already filed a lawsuit. *See* ECF 52 at 24.  The grievance form makes no reference to being forced to take Phenobarbital. It states: "for over three years I've been given Phenobarbital and for half that time I've been asking why, to no avail." *Id.*  Toward the end of the form Mr. Bailey refers to having asked for information about the medications he was taking, but states nothing more.  A review of Plaintiff's medical chart reflects that  the first time he denied a history of seizures was not until October 4, 2019. Def. Mot. Summary Judgment Exh. D at 74.  The medical chart shows that at times, Mr. Bailey stated that he did not wish to receive treatment for his seizure disorder.  *See, e.g.*, *id.* at 4.  But there is nothing in the record suggesting that Mr. Bailey was forced to take medication against his wishes or that he was threatened with punishment if he refused

medication.

Mr. Bailey's claim arises under the Due Process Clause of the Fourteenth Amendment. As discussed in my memorandum denying Defendant's Motion to Dismiss, Mr. Bailey's Complaint "[did] not plead denial of medical care or inadequate medical care in the ordinary sense that such claims arise; rather he plead[ed] in more fundamental terms that he simply does not suffer from any medical condition that warrants phenobarbital." *See* ECF 24.   That allegation is now completely belied by the record, which shows that Mr. Bailey consistently reported a history of seizure disorders, and which shows that at times, he accepted medication.

Pretrial detainees are guaranteed stronger protections in the carceral setting than prisoners who have been convicted. *See Bell v. Wolfish*, 441 U.S. 520, 533 (1979).  It is unclear, however, whether claims regarding medical treatment should be analyzed under the *Bell v. Wolfish* framework or through the Eighth Amendment "deliberate indifference" framework established in *Estelle v. Gamble*, 429 U.S. 97 (1976).  *See Boring v. Kozakierz*, 833 F.2d 468, 471-473 (3d Cir. 1987); *see also Carson v. Mulvhill*, 488 F. App'x 554, 560-62 (3d Cir. 2012). The question under *Bell* would be whether Defendant's actions "amount to punishment of the detainee." 441 U.S. at 535.  If the action is "reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment." *Id.* at 539.  Under *Estelle*, prisoners are protected from "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  429 U.S. at 106.

Under either standard, there is no material issue of fact as to whether Plaintiff's rights were violated.  The Court will take judicial notice that Phenobarbital is a recognized treatment for seizure disorders.  As reported by the Epilepsy Foundation, the leading national organization on management of seizure disorders:

> Phenobarbital is approved in the United States by the Food and Drug Administration (FDA) for add-on therapy for partial and tonic-clonic seizures. It has been used alone for more than 80 years, however, to treat partial and tonic-clonic seizures. It is also used for treatment of status epilepticus….. The advantages of Phenobarbital are its long history of use, low cost, and effectiveness. It has a long half-life, which keeps the level of medication in the blood relatively stable over the course of the day even when it is taken in only one daily dose (often at bedtime).

Epilepsy Foundation, *Phenobarbital*. [4]   The record is consistent that Mr. Bailey suffered from a seizure disorder, for which the medication was indicated, as evidenced by the fact that it was consistently prescribed for him even when he was not incarcerated.  The record is devoid of any indication that he was coerced to take the medication.  For that matter, it is entirely unclear how medical personnel could impose any pressure, let alone discipline, if he refused to take it, if indeed he did so refuse.

Mr. Bailey submitted a sworn declaration acknowledging that he was prescribed phenobarbital beginning in 2014.  *See* ECF 35.  He states that in 2017,  he began to feel side effects from the medication, that he reported this, and that his dosage was subsequently lowered. *Id.; see also* ECF 42-6 at 39 (reflecting the lower dosage). He then attests that upon his return to Berks in 2018, he refused medication and was told by Mr. Kirsch that if he missed any more doses, he would be "moved to medical or the hole till [he] complied." *Id.* at 2. At that point, Mr. Bailey states that he wrote a communication to medical "telling them [he is] not epileptic and there was no response." *Id.*  Sworn testimony, on its own, can be sufficient to survive a motion for summary judgment. *See Jackson v. University of Pittsburgh*, 826 F.2d 230, 236 (3d Cir. 1987); *Weldon v. Kraft*, 896 F.2d 793, 800 (3d Cir. 1990).  In very limited circumstances, however, sworn testimony may not be sufficient to establish a genuine issue of material fact,

---

[4] https://www.epilepsy.com/medications/phenobarbital/advanced

particularly where the nonmoving party "reassert[s] factually unsupported allegations contained in its pleadings." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989). The question is whether the record "is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby,* 477 U.S. 242, 252 (1986). *Accord, Scott v. Harris, supra,* 550 U.S. at 380. Such is the situation here. Mr. Bailey's contention that he does not suffer from epilepsy is repeatedly contradicted by the medical record. *See, e.g.*, ECF 42-6 at 4 (reporting on intake in 2014 that he is epileptic). His allegation that he was forced to take the medication against his will lacks any support in the record, and is contradicted by the fact that his dosage was lowered when requested and that, according to Mr. Bailey, he stopped taking the medication in September 2019. *See* ECF 35 at 4. Even if Kirsch made such a threat, it did not deter Mr. Bailey, and there is no indication of any adverse action taken against him in the prison records Mr. Bailey submitted, which reflect other instances in which he was cited for misconduct. I do not doubt that Mr. Bailey was frustrated by the challenges of managing his condition while constantly moving in and out of correctional institutions. But he has not shown any constitutional violation. A reasonable jury could not return a verdict for Mr. Bailey, and summary judgment is therefore appropriate. *See Wiest*, 812 F.3d at 328.

For those same reasons, Mr. Bailey cannot prevail on a state law malpractice claim. Medical providers must employ "'the required skill and knowledge' necessary 'to exercise the care and judgment of a reasonable' person." *Passarello v. Grumbine*, 87 A.3d 285, 297 (Pa. 2014) (quoting *Donaldson v. Maffucci*, 156 A.2d 835, 838 (Pa. 1959)). With rare exceptions, expert testimony is required to establish malpractice, and Mr. Bailey presents none here. *Maurer v. Trustees of the University of Pennsylvania,* 614 A.2d 754, 757–58 (Pa. Super. 1992) (collecting cases). A patient can under limited circumstances prevail without an expert under

the doctrine of *res ipsa loquitur*, but only where a lay person could conclude as a matter of logic and common experience that malpractice must have occurred.  *Quinby v. Plumsteadville Family Practice, Inc.,* 907 A.2d 1061, 1071 (Pa. 2006).   Here, a lay jury could hardly draw such an inference without expert opinion, given that Mr. Bailey reported a long-standing history of epilepsy, the record showed he had consistently been prescribed phenobarbital and was allergic to other medications, and Mr. Kirsch renewed an existing prescription.  If anything, on the record as it stands, in the absence of an expert testifying to the contrary, it would be more logical to infer that failure to make the medication available would have been malpractice.

3)  <u>Conclusion</u>

Defendant is entitled to summary judgment both on the basis of a failure to exhaust, and on the merits.  An appropriate order will be issued.

<u>   /s/ Gerald Austin McHugh   </u>
United States District Judge